IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**    )
                                )    3:01cr05
        v.                      )    **Electronic Filing**
                                )
**VICTOR DARNELL THOMAS**        )

## OPINION

On September 10, 2002, Victor Darnell Thomas ("defendant") was sentenced to an aggregate sentence of 210 months of incarceration, a $20,000.00 fine, 8 years of supervised release and a $200.00 special assessment after being found guilty by a jury of possession with the intent to deliver 5 grams of more of crack cocaine and possession with intent to deliver a quantity of cocaine (as charged at counts one and two).  Presently before the court is defendant's motion pursuant to Section 404 of the First Step Act.  For the reasons set forth below, defendant's motion will be granted in the form of a re-imposed sentence of time served to date plus a reasonable period of time (not to exceed 21 days) for the Bureau of Prisons to issue any required notifications and process the release of defendant, 6 years of supervised release and a fine of $2,000.00.

Defendant seeks a sentence of 137 months.  He was transferred on May 13, 2009, from the Pennsylvania Department of Corrections into federal custody for service on the instance sentence.  As of as the date his Section 404 motion was filed, May, 1, 2019, he had served over 120 months without considering any addition credit for good time served.  According to defense counsel's estimate, a sentence of 137 months would have resulted in a sentence of time served as

of May 1, 2019, which would require approximately 17 months of good time credit.[1] The court has held defendant's motion in abeyance. While there are modest differences in counsels' respective calculations, the court is satisfied that a re-imposed sentence of time served as of this date is in effect a sentence of approximately 163 actual months of incarceration plus approximately 25 months of good time credit, for a total sentence credit of 188 months.

Defendant references several grounds for the requested relief. Based on the amount of crack and powder cocaine attributed to defendant in the Presentence Investigation Report ("PSIR"), he highlights the changes in the guidelines sentencing range that have occurred since his original sentencing and further notes the systemic changes that have occurred in the sentencing of career offenders over the past decade. He further highlights his post-sentencing efforts toward gaining the education, training and coping skills needed to succeed upon release. These have included over 35 courses in fitness training/coaching, employment skills, Spanish, tutoring/mentoring, suicide prevention/counseling, as well as completing courses in the skilled trade of HVAC. He likewise has completed courses in Conflict Management, Communication and Thinking on Your Feet. He completed programming with International Sports Science Association and is certified as a fitness trainer and currently is enrolled in his third year of seminary at the International College of Bible Theology, Midwest Seminary Bible Theology. He has worked within the Bureau as a suicide companion, teacher's aide and law library clerk. He has earned the respect and support of his case managers over the past several years, who believe he "has what it takes to be a productive member of society . . . wherever he goes." Supplement to Section 404(b) Motion (Doc. No. 243) at 2. Finally, defendant notes his current age and maintains that his age and his post-sentencing rehabilitative efforts support the requested relief.

---

[1] The government estimated that defendant had 513 days of good time credit as of May 15, 2019, which was just shy of 18 months and with that good time defendant had credit for 137 months as of that date.

The government contends that although defendant has a qualifying conviction for relief, the record sufficiently demonstrates that the original sentencing judge would have imposed the same term of incarceration notwithstanding the subsequent changes in the applicable law and guidelines calculations. It notes that defendant received the benefit of a downward guidelines departure under the then-mandatory guidelines after proceeding to trial and the rationale for the degree of departure given at sentencing made clear that the record did not justify any relief beyond what was given. And although defendant's guidelines calculations subsequently have been lowered, the government notes that the range is still well above the departure given and the sentence imposed. Thus, from the government's perspective it is clear that defendant would have received the same sentence even if the changes in the Fair Sentencing Act of 2010 had been applied; on this basis it urges this court to deny any relief other than reducing defendant's term of supervised release from 8 to 6 years.

Moreover, the government maintains that defendant is not entitled to benefit from post-sentencing changes in the law, including the changes brought about by United States v. Booker, 543 U.S. 220 (2005). It likewise asserts that defendant's post-sentencing efforts toward successful rehabilitation are beyond the scope of the court's current review.

The standards by which we review First Step Act motions are set forth in United States v. Jaison Ceatrix Thompson, 1:05cr42, 2019 WL 4040403 (W.D. Pa. Aug. 27, 2019), United States v. Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019), and United States v. Knight, 1:98cr03, 2021 WL 266341 (January 27, 2021), and those standards are incorporated herein. Those standards and the record as developed in conjunction with the instant motion sufficiently support the determination that the court should exercise its discretion and award defendant the reduced sentence referenced above.

We previously have rejected the government's contention that a defendant should be denied relief merely because he or she would be subject to the same statutory penalties and guidelines sentencing range if the case were brought today.  See United States v. Frederick, 2:07cr387 (W.D. Pa. Feb. 4, 2020),  Doc. No. 452 at p. 5; United States v. Dennis, 2:07cr37 (W.D. Pa. Feb. 18, 2020), Doc. 63 at 2-3.  We did so because a defendant's eligibility for relief is determined solely by qualifying under the First Step Act's definition of a "covered offense" and is not conditioned on a corresponding decrease in the applicable guidelines sentencing range.  See Thompson, 2019 WL 4040403 *11 n.6 (citing United States v. Garrett, 2019 WL 2603531, *3 (S.D. Ind. June 25, 2019) (rejecting the government's contention that relief should be denied where application of the career offender guidelines continued to produce the same sentencing range of 360 months to life and opining that "[t]he fact that Mr. Garrett's guideline range remains unchanged does not foreclose a reduction of his sentence, at least not where he was sentenced to the mandatory minimum and the mandatory minimum sentence was thereafter reduced by section 2 of the Fair Sentencing Act.") (citing United States v. Bean, No. 1:09-cr-143, 2019 WL 2537435, at *5–6 (W.D. Mich. June 20, 2019)); accord United States v. Biggs, 2019 WL 2120226, *3-4, 7 (N.D. Ill. May 15, 2019) (same); United States v. Hadley, 389 F. Supp.3d 1043, 1048 (M.D. Fla. 2019) (granting First Step Act motion notwithstanding unchanged career offender guidelines sentencing range of 360 months to life); United State v. Payton, 2019 WL 2775530, *4-5 (E.D. Mich. July 2, 2019) (granting First Step Act relief where career offender guidelines sentencing range remained unchanged); United States v. Clemon, 2019 WL 6894130, *1 (D. S.C. Dec. 18, 2019) (granting relief where pre- and post-First Step Act guidelines sentencing range remained unchanged); cf. United States v. Brandon, 2019 WL 4139400, *3-4 (E.D. Mich. Aug. 30, 2019) (granting First Step Act relief notwithstanding presidential commutation of sentence that reduced it below the guidelines sentencing range

4

applicable at First Step Act re-sentencing) (collecting cases). Thus, even assuming we are unable to re-examine a defendant's prior guidelines sentencing calculations and he or she remains subject to the same guidelines sentencing range, these sentencing factors are not legal barriers to awarding First Step Act relief.

We likewise have rejected the government's argument that we should follow the sentencing rationale utilized at a defendant's original sentencing hearing and simply arrive at the same sentence. See United States v. Frederick, 2:07cr387, Doc. No. 452 at p. 5 (W.D. Pa. Feb. 4, 2020); United States v. Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019); United States v. Dennis, 2:07cr37, Doc. 63 at 3 (W.D. Pa. February 18, 2020); United States v. Moreland, 2:07cr387, Doc. No. 473 at p. 6, 10 (W.D. Pa. March 2, 2022). That rationale was advanced under a set of existing precepts that were displaced by the First Step Act and replaced by the standards embodied therein. The standards now governing the task at hand were intended to give the defendant a "do-over of sorts" and we fail to see any sound justification for shirking the responsibility of performing that task under the guise of prior judicial musings rendered under meaningfully different circumstances.

We likewise have declined to limit our review of the information to be considered in conjunction with a section 404 First Step Act motion to 1) the information available at the time of the original sentencing and/or 2) only changes in the applicable guidelines. See Thompson, 2019 WL 4040403, *8-11 (declining to adopt the scope of review under 18 U.S.C. § 3582(c)(2) on the ground that "the First Step Act contains its own independent grant of discretionary authority to the district courts by permitting a 'court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.' This grant 'authorizes a reduction in sentence by its own terms' and does not depend on any complimentary authority in § 3582.")

5

(quoting Dodd, 372 F. Supp.3d at 797 n.2 and Boulding, 379 F. Supp.3d at 653); Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019) (declining to limit the scope of review to the record as it existed at the original sentencing hearing and/or to follow in lockstep with the original sentencing rationale). Instead, we have determined that "a court deciding whether to impose a reduced sentence under section 404 should evaluate all such information pursuant to the 'lodestone' of sentencing factors set forth in 18 U.S.C. § 3553(a), any changes to the applicable guideline range, post-sentencing conduct bearing on rehabilitation and so forth." Thompson, 2019 WL 4040403, *10 (collecting cases).

This approach "permits the court to engage in its traditional role of factfinding in relation to the imposition of a sentence within the prescribed limits." Id. "It also permits the consideration of the brute facts and information that traditionally have a bearing on the sound exercise of the court's sentencing discretion." Id.

Each of the above tenants has since become settled law under the United States Court of Appeals for the Third Circuit's controlling and persuasive precedent. A defendant's eligibility to receive relief under the First Step Act turns on whether the elements of the offense of conviction were modified by sections 2 or 3 of the Fair Sentencing Act of 2010 and not whether his or her actual conduct might have supported charges of the same or greater magnitude. United States v. Jackson, 964 F.3d 197, 201-02 (3d Cir. 2020). This approach is supported by the textual structure of the First Step Act, the "anti-surplusage" cannon of statutory construction, the verb tense utilized in the statute, the structure of the modifications made by the Fair Sentencing Act of 2010, the common understanding of a "violation" and "the clear weight of persuasive authority" issued by the other courts of appeals. Id. at 202-04. It likewise avoids the speculation that would ensue if eligibility determinations were based on the anticipated discretionary decisions that the prosecutors and courts frequently make under the myriad of circumstances that arise in

6

such settings. Id. at 205. And it is in line with the straightforward approach that Congress chose in crafting the statute. Id. ("Beyond a few specific limitations found within the First Step Act, we see 'no indication that Congress intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis.'") (quoting Wirsing, 943 F.3d at 186 (citing § 404(a), 132 Stat. at 5222)).

It likewise is settled that relief under the First Step Act is not barred solely because a defendant's actual conduct continues to produce the same guidelines sentencing range. United States v. Easter, 975 F.3d 318, 327 (3d Cir. 2020). Instead, once a defendant is determined to be eligible for relief, the court's decision as to whether to grant it and impose a new sentence must be grounded in a meaningful and individualized assessment of the § 3553(a) factors "to the extent they are applicable." Id. at 326. These factors encompass any post-sentencing developments, such as health issues and measures aimed at rehabilitation. Id. at 326-27. Thus, while an eligible defendant is not entitled to relief or even a plenary hearing in exercising the discretion afforded under the First Step Act, the "do-over of sorts" in deciding whether relief should be granted requires an application of the traditional sentencing factors to the current circumstances presented through the motion. Id. at 325. Such an approach 1) assures that any recent changes having a bearing on the mandated balancing of factors are considered and 2) advances the goals of promoting consistency and predictability in sentencing. Id.

The Supreme Court and our Court of Appeals recently have clarified that the resentencing proceeding authorized by the First Step Act is anchored in the first instance in a recalculation of the movant's statutory penalties and the movant's "benchmark Guidelines range" as impacted only by the changes brought about by the Fair Sentencing Act of 2010. United States v. Shields, 48 F.4th 183, 191 (3d Cir. 2022) ("In the category of what courts 'may not' do, the Court held, contrary to Easter and [United States v. Murphy, 998 F.3d 549 (3d Cir. 2021)],

7

that a district court's discretion does not empower it to 'recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act,' as 'the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense.'") (quoting Concepcion v. United States, -- U.S. --, 142 S. Ct. 2389, 2402 (2022)). And then in further informing the decision as to whether to exercise the sentencing discretion afforded under the Act, "a district court adjudicating a motion under the First Step Act may consider [any] intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion." Shields, 48 F.4th at 190-91 (quoting Concepcion, 142 S. Ct. 2396). Changes of fact include both detrimental and favorable post-sentencing evidence bearing on the defendant's character. Id. at 191. Consideration of all such matters is grounded in the deeply rooted "federal sentencing framework" and permits the sentencing court "to consider the 'fullest information possible concerning the defendant's life and characteristics.'" Id. (quoting Concepcion, 142 S. Ct. at 2399 (quoting Pepper v. United States, 562 U.S. 476, 488, 490 (2011)).

Of course, our unwillingness to follow the government's lead on the tenants recounted above does not mean that the salient aspects of defendant's character and criminal history it has highlighted should be discounted. To the contrary, those factors continue to inform the sound exercise of discretion in formulating an appropriate sentence. But it is the discretion that has been afforded by the First Step Act that must be exercised in accordance with the prevailing standards of today notwithstanding the government's perception that yesterday's views were better.

We turn to that undertaking in this case. To sustain the conviction in violation of § 841(a) and impose the mandatory sentences required by § 841(b)(1)(B)(iii), the relevant statutory

element the government was required to prove was that the offense involved possession with the intent to distribute 5 grams or more of crack cocaine. Sections 2 and 3 of the Fair Sentencing Act modified the statutory penalties for § 841(a) offense involving crack cocaine by raising the threshold quantity "to trigger the 10-years-to-life range" to 280 grams and the threshold quantity needed to trigger the 5 to 40 years range to 28 grams. Easter, 975 F.3d at 321. A conviction for more than 5 but less than 28 grams of crack cocaine now falls under § 841(b)(1)(C), which sets a penalty range of up to 20 years. 21 U.S.C. § 841(b)(1)(C). Under the controlling "statute of conviction approach," defendant was convicted of and sentenced for a "covered offense" as defined by the First Step Act. Jackson, 964 F.3d at 202 & n.6

  Defendant's offense conduct involved possession with the intent to distribute 27.6 grams of crack cocaine and possession with the intent to distribute 26.1 grams of powder cocaine. These quantities were seized from a search of the vehicle defendant was driving. A traffic stop was effectuated after a confidential informant reported that defendant was traveling to Philadelphia to purchase drugs to distribute in the Altoona area.

  Defendant's prior criminal history reflected numerous convictions (8 adult convictions) which defendant had been amassed between the ages of 31 and 39. He had one conviction for possession to distribute 2.9 grams of cocaine base which resulted in a 9 to 23 ½ month sentence of incarceration. He had several convictions from incidents of domestic violence involving the mother of his child, including one where he left her with a bloodied face and broken wrist. And he had sustained convictions for resisting arrest and simple assault on a police officer. He was on state probation when arrested for the instant federal offenses.

  Defendant also accrued five pending sets of charges between the date of his arrest and his sentencing. These included terroristic threats and a violent assault on a trial witness against him. He likewise was charged with aggravated assault on sheriff's deputies.

Defendant's criminal convictions netted 12 points and placed him in criminal history category V. The Presentence Investigation Report concluded that defendant qualified as a career offender – based upon his prior convictions for simple assault and possession with the intent to deliver. Because the statutory maximum for the offense of conviction was life,[2] defendant had a base offense level of 37. A base offense level of 37 when combined with a criminal history category of VI produced a guidelines sentencing range of 360 months to life.

At sentencing, Judge D. Brooks Smith emphasized that defendant should be sentenced to a significant amount of time. Nevertheless, he posited that the range of 360 months to life was "way over the top." Pursuant to the urging of standby counsel, Judge Smith departed from the guidelines pursuant to <u>United States v. Shoupe</u>, 35 F.3d 835 (3d Cir 1994), on the premise that defendant's career-offender status significantly overrepresented the seriousness of his past criminal conduct and his likelihood for recidivism. Judge Smith ratcheted defendant's criminal history down to category V, and pursuant to the prevailing precedent at that time, adjusted defendant's offense level down to 33, which produced a sentencing range of 210 to 262 months.

Judge Smith sentenced defendant to the low end of the guidelines range after departure: 210 months. He also imposed 8 years of supervised release, a fine of $20,000.00 and a special assessment of $200.00.

Judge Smith made clear that he would have granted an additional degree of departure from the guidelines but for three repetitive traits he had observed in defendant's behavior: a lack of truthfulness; a lack of contrition; and an inability to accept responsibility for one's own conduct. Judge Smith explained:

> I want you to know that had it not been for some of the untruths that have been found as a matter of record in this case by you, had it not been for your total lack of contrition as to

---

[2] The government filed an information pursuant to 21 U.S.C. § 851 qualifying defendant's conviction as a second offense under 21 U.S.C. 841(b)(1)(B), thereby increasing the statutorily mandated penalties from 5 to 40 years to 10 years to life. <u>See</u> Doc. No. 79.

> anything, had it not been for your constantly having blamed counsel for matters which they have denied and where I found them to be truthful, I would have probably found you eligible, in fact, I'm virtually – I'm certain I would have found you eligible for a much greater downward departure.
>
> * * *
>
> But at some point along the road, Mr. Thomas, you're going to have to accept responsibility for a lot of what you've done here and for what has brought you here.

Doc. No. 244-1 at 58-59.

Defendant appealed his sentence. See Doc. No. 118. The United States Court of Appeals for the Third Circuit affirmed defendant's sentence. United States v. Thomas, 357 F.3d 357 (3d Cir. 2004). Defendant's case was re-assigned to this member of the court on October 2, 2002, following Judge's Smith's elevation to the Court of Appeals.

Application of the changes in the Fair Sentencing Act of 2010 produces a meaningful difference in the statutory penalties and guidelines sentencing range in this case. First, after application of § 851, the penalty range of 10 years to life for a second offense under § 841(b)(1)(B) no longer applies and instead a second offense in violation of § 841(b)(1)(C) triggers only a maximum sentence of 30 years. Thus, a re-imposed sentence of time served - consisting of 163 months with good time credit of 25 months, resulting in a total sentence of 188 months - is consistent with the statutorily mandated sentence for the offense conduct.

Second, defendant's bench mark guidelines range has been deceased. Under the career offender guidelines, defendant's statutory maximum of 30 years would have produced an offense level of 34. An offense level of 34 and a criminal history category of VI produces a guidelines sentencing range of 262 to 327 months. See Gov. Brief in Opposition (Doc. No. 244) at 9. A reduction from 360 to 262 reflects approximately a 27 percent reduction on the low end of defendant's bench mark guidelines. A straightforward 27 percent reduction in the low end guideline sentence defendant received after departure would net a sentence of 153 months. Of course, the sentence this court is authorized to impose at this juncture cannot be based only on

such a mechanical application of the guidelines; instead, the exercise of that discretion must be grounded in the deeply rooted "federal sentencing framework" that has been created by the longstanding application of both the guidelines and the § 3553(a) factors and it must reflect an assessment reached after considering the "fullest information possible concerning the defendant's life and characteristics." Shields, 48 F.4th at 191.

Notwithstanding defendant's interaction with the criminal justice system prior to committing the instant offense, he had only served relatively short sentences of incarceration prior to being sentenced on the instant offense. He was sentenced to less than 2 years on his prior drug trafficking conviction and had only received minimal to modest sentences on most of his other convictions, including several sentences of probation.

The lack of any incrementally proportionate increase in incarceration between the state sentences and the 30 year low-end guidelines range mandated on the instant federal offense likely contributed to Judge Smith's determination that career offender status substantially overstated the seriousness of defendant's past criminal conduct. After all, Judge Smith departed from the career offender range of 360 months to life down to an adjusted range of 210 to 262 months and sentenced defendant at the low end of the adjusted range. And the significant lack of a proportional increase in punishment between the prior state court punishments and the then-mandated guidelines sentencing range this court was required to impose after departure (which is now 262 months after application of the changes made by the Fair Sentencing Act of 2010) continues to be an important factor that the court has taken into account in granting the discretionary relief afforded by the First Step Act.[3]

---

[3] Even assuming that the court were to apply the penalties for the actual offense conduct as advocated by the government, a re-imposed sentence of time served - consisting of 163 months with good time credit of 25 months, resulting in a total sentence of 188 months - is consistent with a proper placement of defendant's actual drug-trafficking conduct and criminal history within the heartland of the guidelines as typically applied to such conduct and history.

Several other aspects of the record inform the exercise of our discretionary authority and support the imposition of a reduced sentence here. Defendant has prepared himself for a successful reintegration into society. He sought to address the behavior that plagued him as a younger adult by completing over 35 courses in fitness training/coaching, employment skills, Spanish, tutoring/mentoring, suicide prevention/counseling, and the skilled trade of HVAC. He likewise has completed courses in Conflict Management, Communication and Thinking on Your Feet. He completed programming with International Sports Science Association and is certified as a fitness trainer. He currently is enrolled in his third year of seminary at the International College of Bible Theology, Midwest Seminary Bible Theology.

Moreover, defendant has sought to hone many of his acquired skills within the Bureau by working as a suicide companion, teacher's aide and law library clerk. He has earned the respect and support of his case managers over the past several years, who believe he "has what it takes to be a productive member of society . . . wherever he goes." Supplement to Section 404(b) Motion (Doc. No. 243) at 2. One of defendant's case managers has provided the following insight into his institutional behavior:

> Mr. Thomas is an exemplary inmate. He frequently goes above and beyond his duties to ensure he is bettering himself and helping others around him. Mr. Thomas has served as a mentor for many inmates within FCI Berlin and encourages them to participate in activities to better themselves. I have personally asked him to counsel several younger inmates and I have observed him mentor many of his peers throughout the institution. Furthermore, Mr. Thomas displays a strong work ethic. He has worked as a Unit Orderly since April 2019 and a Suicide Companion since February 2019. As a Suicide Companion he sits with other inmates who are struggling with their incarceration and different factors in their lives. Within both of these duties he works closely with staff. Mr. Thomas presents as respectful to both other inmates and staff. Moreover, he displays strong communication skills. He is able to communicate effectively with both staff and other inmates. This skill has helped break communication barriers between the two groups. Lastly, he has engaged in multiple programs such as, "Suicide Companion Program," "Classic Film", "Mock Job Fair," "Piano for Beginners," "Employment Skills" and "Tutor Training."

Memorandum of K. Jordan-Kelley (Doc. No. 257-1); accord Memorandum of case manager R. Rouleau (Doc. No. 243-1) ("It is my opinion that inmate Thomas has done what he has

13

needed to do to better prepare himself to return to society. Additionally, I believe he has what it takes to be a productive member of that society wherever he goes in life.")

And this institutional behavior has earned defendant at least 513 days of good time credit as of May of 2019, without any significant disciplinary infractions since May 13, 2009, when defendant began serving his federal sentence in this case. This history suggests he has been free from major disciplinary incidents over the past several years and further demonstrates that he has not been a management concern for the Bureau.[4]

Finally, defendant was young at the time he committed the predicate offenses. He received only modest sentences of incarceration on those offenses. He was in his mid thirties at the time he committed the instant offense. He has now been incarcerated since July of 2002, serving 7 years for his state convictions (which were pending charges at the time of sentencing) and over 13 consecutive years for his federal offenses, for a combined period of 20 years. He is approaching 60 years of age and has reached an age where the statistics on the recidivism show that his likelihood of re-offending has meaningfully declined.[5] His current age, post-sentencing conduct while incarcerated and continuing efforts to better himself bode well for his successful reintegration. Collectively, these factors further support the determination that a re-imposed sentence of time served (approximately 163 actual months of incarceration plus approximately 25 months of good time credit, for a total sentence credit of 188 months (15 years and 8 months) is a sufficient term of incarceration.

---

[4] The recent adjustment of defendant's projected release date from August 9, 2024, to April 7, 2024, indicates that defendant's satisfactory compliance with the Bureau's requirements for good time credit has continued during the pendency of the instant motion.

[5] See National Institute of Justice, Five Things About Deterrence (May 2016), at 2, available at https://www.ncjrs.gov/pdffiles1/nij/247350.pdf ("Even those individuals who commit crimes at the highest rates begin to change their criminal behavior as they age. The data show a steep decline at about age 35.").

Consideration of all of the above through the lens of the § 3553(a) factors convinces us that the proper exercise of discretion is a reduction to a term of time served and 6 years of supervised release. The court also will reduce defendant's fine from $20,000.00 to $2,000.00 as part its First Step Act sentencing discretion in order to provide defendant with the opportunity to re-enter society under financial circumstances that enhance the chances for success. A reduced sentence of this degree strikes the proper balance in applying the § 3553(a) factors and imposes a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. Although defendant's offense conduct constituted a serious drug-trafficking operation, an adjusted sentence of 188 months, 6 years of supervised release and a $2,000.00 fine adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. It likewise is sufficient to serve the interests of promoting adequate deterrence and protecting society from harm. It further appears to have satisfied the need to rehabilitate defendant. Accordingly, defendant's motion pursuant to Section 404 of the First Step Act will be granted by separate order in the form of re-imposed sentence of time served to date plus a reasonable period of time (not to exceed 21 days) for the Bureau of Prisons to issue any required notifications and process the release of defendant, 6 years of supervised release and a fine of $2,000.00. A Judgment Order of Conviction and Sentence imposing this new sentence will be issued.

<u>Date: January 5, 2023</u>

              <u>s/David Stewart Cercone</u>
              David Stewart Cercone
              Senior United States District Judge

cc:  Adam N. Hallowell, AUSA
   Samantha L. Stern, AFPD

   (*Via CM/ECF Electronic Mail*)